**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI, OXFORD DIVISION**

**HOWARD LAWRENCE GUTHRIE, JR.,**
**Individually, and as Executor of the**
**ESTATE OF HOWARD LAWRENCE**
**GUTHRIE, and on Behalf of All Wrongful**
**Death Beneficiaries of HOWARD LAWRENCE**
**GUTHRIE, Deceased,**

    **Plaintiff,**

v.                                            **No. 3:13-cv-00244-M-A**
                                                                     **JURY DEMANDED**

**QUITMAN COUNTY HOSPITAL, LLC;**
**JAMES EDWARD WARRINGTON, M.D.; and**
**JIM PANG, JR., M.D.,**

    **Defendants.**

**AMENDED COMPLAINT FOR PERSONAL INJURY AND WRONGFUL DEATH**

COMES NOW the Plaintiff Howard Lawrence Guthrie, Jr., individually, and as Executor of the Estate of Howard Lawrence Guthrie, and on behalf of all wrongful death beneficiaries of Howard Lawrence Guthrie, deceased, and files this amended complaint for personal injury and wrongful death, stating as follows:

1.    Plaintiff Howard Lawrence Guthrie, Jr. is an adult resident citizen of Phillips County, Arkansas. He is the surviving son and next of kin of Howard Lawrence Guthrie, deceased. On or about May 23, 2012, Plaintiff was appointed Executor of the Estate of Howard Lawrence Guthrie, pending in the Circuit Court of Phillips County, Arkansas.

2.    At all times relevant herein, Defendant Quitman County Hospital, LLC was a for-profit company, organized and existing under the laws of the State of Mississippi, with its principal place of business in Marks, Mississippi. Defendant, at all times relevant herein, was

conducting and doing business in Marks, Mississippi, where patients were received and treated at Quitman County Hospital & Nursing Home.  While caring for and treating Howard Lawrence Guthrie, the acts performed by physicians, nurses, and other agents and employees of Defendant were in connection with their duties at Quitman County Hospital & Nursing Home and they were acting within the scope of their employment and/or agency.  Accordingly, Defendant is responsible and vicariously liable for the negligent acts and omissions of its physicians, nurses, agents and/or employees, as hereinafter described, under the doctrines of *respondeat superior*, apparent agency, actual agency, and express agency.

      3.      [Intentionally omitted]

      4.      [Intentionally omitted]

      5.      Upon information and belief, at all times relevant herein, Defendant James Edward Warrington, M.D. (hereinafter "Dr. Warrington") was a resident of Mississippi and was duly licensed to practice medicine by the State of Mississippi.  Dr. Warrington practiced medicine at Quitman County Hospital & Nursing Home in Marks, Mississippi, where patients were received and treated.  Dr. Warrington was, upon information and belief, at all relevant times an employee and/or agent of Quitman County Hospital, LLC, Quitman County Nursing Home Holdings, LLC, and Quitman County Nursing Home, LLC, and did further independently practice medicine.

      6.      Upon information and belief, at all times relevant herein, Defendant Jim Pang, Jr., M.D. (hereinafter "Dr. Pang") was a resident of Mississippi and was duly licensed to practice medicine by the State of Mississippi.  Dr. Pang practiced medicine at Quitman County Hospital & Nursing Home in Marks, Mississippi, where patients were received and treated.  Dr. Pang was, upon information and belief, at all relevant times an employee and/or agent of Quitman County

2

Hospital, LLC, Quitman County Nursing Home Holdings, LLC, and Quitman County Nursing Home, LLC, and did further independently practice medicine.

7. The acts and omissions giving rise to this lawsuit all occurred in Marks, Quitman County, Mississippi. This Court has proper jurisdiction and venue over this action and the parties hereto pursuant to 28 U.S.C. §§ 1332 and 1391. This lawsuit is timely filed pursuant to applicable Mississippi law.

8. Plaintiff has complied with the provisions of Miss. Code Ann. § 15-1-36 by mailing written notice of claim to all Defendants giving notice of Plaintiff's intention to file this lawsuit for medical negligence. The notice requirements of Miss. Code Ann. § 15-1-36 have been satisfied.

9. Howard Guthrie was admitted to Quitman County Hospital & Nursing Home from his home on March 1, 2012, with dementia and complaints of increasing confusion and anger. Mr. Guthrie was admitted by Dr. Pang, who ordered that he receive the following medication: Risperdal, 1 mg by mouth three times a day; Haldol, 2 mg by mouth or injection every 4 hours as needed for agitation; and Ativan, 1 mg by mouth or injection every 4 hours as needed for agitation. Risperdal, Haldol, and Ativan are all sedatives that can be used to treat psychiatric disorders.

10. On March 6, 2012, following a report of increased confusion, an order was issued for Mr. Guthrie to receive Seroquel, 50 mg by mouth at bedtime. The order also increased Mr. Guthrie's dosage of Risperdal to 2 mg by mouth three times a day. Seroquel is a sedative that can be used to treat psychiatric disorders.

10A. Dr. Pang and the nurses at Quitman County Hospital failed to fully and appropriately inform Mr. Guthrie and his family of the material risks of these anti-psychotic

3

medications.

11. On March 9, 2012, Mr. Guthrie was administered 6 mg of Risperdal, 1 mg of Ativan, and 50 mg of Seroquel. On March 10, 2012, he was administered 6 mg of Risperdal, 1 mg of Ativan, 50 mg of Seroquel, and 2 mg of Haldol.

12. On March 11, 2012, Dr. Pang ordered that Mr. Guthrie's Ativan be increased to 2 mg by mouth or injection every 4 hours as needed and that his Haldol be increased to 5 mg by mouth or injection every 4 hours as needed. On March 11, 2012, Mr. Guthrie was administered 6 mg of Risperdal, 4 mg of Ativan, 50 mg of Seroquel, and 5 mg of Haldol. Upon information and belief, these medications were being used to chemically restrain Mr. Guthrie.

13. On March 13, 2012, an order was issued to decrease Mr. Guthrie's dosage of Risperdal to 1 mg by mouth three times a day. Upon information and belief, this order was given by Dr. Warrington.

14. On March 14, 2012, Mr. Guthrie was administered 3 mg of Risperdal, 2 mg of Ativan, and 50 mg of Seroquel.

15. An order was issued on March 15, 2012 to increase Mr. Guthrie's dosage of Seroquel to 100 mg by mouth at bedtime. On March 15, 2012, Mr. Guthrie was administered 3 mg of Risperdol, 4 mg of Ativan, 100 mg of Seroquel, and 5 mg of Haldol. Upon information and belief, these medications were being used to chemically restrain Mr. Guthrie. On March 16, 2012, he was administered 3 mg of Risperdol.

15A. Because he was heavily sedated and his vital signs were abnormal, Mr. Guthrie was transferred briefly to the emergency department of Quitman County Hospital. A complete and appropriate evaluation of Mr. Guthrie was not performed in the emergency room. Instead, only a fluid IV was started and Mr. Guthrie was transferred back to the Senior Care Unit.

4

16. Dr. Warrington saw Mr. Guthrie on the morning of Saturday, March 17, 2012 and noted:

> This patient is still very heavily sedated this morning. I was not able to arouse him by calling his name. During a sternal rub it did change his respirations a bit. Whit I did sit him up he did open his eyes, but I do think it is going to take a little while for his sedation to wear off. He did get Haldol and Ativan Thursday night and has been sleeping heavily since then. . . . At this point we are holding all sedative medications. I will be monitoring him very closely and will follow up with him in the morning.

17. By 11:00 a.m. on the morning of March 17, 2012, Mr. Guthrie was ordered transferred to the Emergency Room at Quitman County Hospital. Upon arrival in the Emergency Room, it was noted that Mr. Guthrie had developed a fever, increased white blood cell count and that he was unresponsive to verbal or tactile stimuli. He was diagnosed with septic shock with coma. Due to respiratory failure, Mr. Guthrie was intubated. Around 7:00 p.m., Mr. Guthrie was ordered transferred by air ambulance to Baptist Hospital in Memphis, Tennessee for a higher level of care.

18. Upon arrival at Baptist Hospital, Mr. Guthrie was diagnosed with healthcare associated pneumonia with acute respiratory distress, acute renal failure, severe protein-calorie malnourishment, and septic shock. He was transferred to the intensive care unit.

19. On March 18, 2012, Mr. Guthrie was seen for an internal medicine consult, at which time the physician noted that Mr. Guthrie had been "overly sedated" at Quitman County Hospital & Nursing Home. The following day, on March 19, 2012, he was seen for an infectious disease consult, at which time the physician noted that Mr. Guthrie's respiratory arrest was "due to oversedation."

20. Having not regained responsiveness and still being ventilator dependent, Mr. Guthrie went into cardiopulmonary arrest on March 24, 2012. He was revived briefly, but upon

5

the advice of the physicians, Mr. Guthrie's family elected to allow him to pass away as comfortably as possible. Mr. Guthrie died on March 24, 2012.

## MEDICAL NEGLIGENCE

21. Defendants knew or should have known that the amount and combination of drugs that were ordered and administered to Mr. Guthrie, including Risperdal, Haldol, Ativan, and Seroquel, would likely result in serious adverse events, including respiratory failure and death. As a direct and proximate result of the amount and combination of drugs that he was ordered and administered, Mr. Guthrie suffered respiratory failure and died. As a direct and proximate result of Defendants ordering and administering these medications and using them as a chemical restraint, Mr. Guthrie suffered injuries and death.

22. The evaluation and treatment of Mr. Guthrie by Defendants was below acceptable standards of care, skill, and diligence. Accordingly, the treatment and evaluation amounted to medical negligence. The medical negligence of Defendants included, but was not limited to:

    (a)    failing to exercise reasonable care and diligence in the application of knowledge, skill, care, and ability in the treatment and evaluation of Howard Lawrence Guthrie;

    (b)    failing to exercise their best medical judgment in their care and treatment of Howard Lawrence Guthrie;

    (c)    failing to comply with the applicable standard of care;

    (d)    ordering an amount and combination of drugs, including Risperdal, Haldol, Ativan, and Seroquel, that was likely to result in serious adverse events;

    (e)    administering an amount and combination of drugs, including Risperdal,

     Haldol, Ativan, and Seroquel, that was likely to result in serious adverse events;

  (f) such other negligent acts and omissions as may be shown at trial; and

  (g) failing to properly manage, in the Senior Care Unit and in the emergency room, the deteriorating medical condition of Howard Lawrence Guthrie after he was over-sedated.

23. As a direct and proximate result of the negligence of Defendants, Howard Lawrence Guthrie suffered severe injuries and death. The injuries and damages sustained by Mr. Guthrie include, but are not limited to:

  (a) Physical pain and suffering;

  (b) Mental and emotional pain and suffering;

  (c) Permanent injury;

  (d) Medical expenses;

  (e) Loss of enjoyment of life;

  (f) Death;

  (g) Funeral and burial expenses; and

  (h) All damages available to him under the law.

24. As a direct and proximate result of the negligence of Defendants, Plaintiff Howard Lawrence Guthrie, Jr. has suffered a loss of society and consortium with his father, for which he is entitled to recover under the law.

## LACK OF INFORMED CONSENT

24A. Defendant Pang and Defendant Quitman County Hospital, LLC, through its nurses, had a duty to warn Mr. Guthrie and his family that the use of anti-psychotic medication

7

involved an increased risk of death. An increased risk of death would have been material to Mr. Guthrie and his family in determining whether to authorize the use of anti-psychotic medication.

24B. Defendant Pang and Defendant Quitman County Hospital, LLC, through its nurses, failed to properly warn Mr. Guthrie and his family and, therefore, did not obtain informed consent for the use of antipsychotic medication.

24C. As a direct and proximate result of Defendants' failure to obtain informed consent, Howard Lawrence Guthrie suffered severe injuries and death.

## **BREACH OF CONTRACT**

24D. For the entire period of Mr. Guthrie's hospitalization at Quitman County Hospital, Defendant Pang was contractually obligated to provide one-on-one contact with the patients, including Mr. Guthrie, at least three times each week.

24E. As a patient, Mr. Guthrie was an intended beneficiary of the contract between Defendant Pang and Defendant Quitman County Hospital.

24F. Defendant Pang breached his contact with Quitman County Hospital by failing to provide one-on-on contact with Mr. Guthrie at least three times each week during Mr. Guthrie's hospitalization.

24G. As a direct and proximate result of Defendant Pang's breach of contract, Howard Lawrence Guthrie suffered severe injuries and death.

25. Plaintiff specifically reserves the right to amend this Complaint and plead further in this cause.

**WHEREFORE, PREMISES CONSIDERED, PLAINTIFF PRAYS:**

1. That he be awarded damages in the amount within the jurisdictional limits of this Court and in excess of the sum of $75,000.00, such amount to include, but not be limited to,

compensatory damages, prejudgment and postjudgment interest, attorneys' fees, expenses, and the costs of the Court; and

    2.    That he be awarded all other relief to which he may be entitled.

**Plaintiff demands a jury trial as to all issues in this case.**

        Respectfully submitted,

        BURCH, PORTER & JOHNSON, PLLC

        By: s/Frank B. Thacher, III
        Frank B. Thacher, III (MS Bar #101866)
        130 North Court Avenue
        Memphis, Tennessee 38103
        (901) 524-5000

        Attorneys for Plaintiff

## CERTIFICATE OF CONSULTATION

Pursuant to Miss. Code Ann. § 11-1-58, I do hereby certify that I have reviewed the facts of this case and consulted with at least one expert qualified pursuant to the Mississippi Rules of Civil Procedure and the Mississippi Rules of Evidence who is qualified to give expert testimony as to standard of care or negligence and who I reasonably believe is knowledgeable in the relevant issues involved in this particular action, and I have concluded, on the basis of such review and consultation, that there is a reasonable basis for the commencement of this action.

        s/ Frank B. Thacher, III

## **CERTIFICATE OF SERVICE**

I hereby certify that I have electronically served the foregoing on July 7, 2014:

Gaye Nell Currie, Esq.
Rex M. Shannon, III, Esq.
P.O. Box 651
Jackson, MS 39205

Robert J. Dambrino, III, Esq.
P.O. Box 901
Grenada, MS 38902

Clinton M. Guenther, Esq.
Tommie Williams, Esq.
P.O. Box 8230
Greenwood, MS 38935

<span style="text-align:right; display:block;">s/ Frank B. Thacher, III</span>